UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JONATHON TROSS and THERESA TROSS, | : | CIVIL ACTION NO. |
| | : | 3:11-CV-1326 (JCH) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| RITZ CARLTON HOTEL COMPANY, LLC, et al., | : | MARCH 17, 2014 |
| | : | |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (Doc. No. 125)**

**I.    INTRODUCTION**

Plaintiffs Jonathan and Theresa Tross (collectively, the "plaintiffs") bring this action against defendants The Ritz-Carlton Hotel Company, LLC ("RCHC"), Marriott International, Inc. ("Marriott"), and The Ritz-Carlton Virgin Islands, Inc. ("RCVI") (collectively, the "defendants") for damages allegedly sustained as a result of Mr. Tross being struck on the head by a shower tile while in a hotel room at the Ritz-Carlton St. Thomas Hotel in St. Thomas, Virgin Islands (the "Hotel").  Plaintiffs' Amended Complaint (Doc. No. 36) alleges two counts.  The first count claims that the defendants' negligence caused injuries to Mr. Tross.  The second count claims that Mrs. Tross suffers from a loss of consortium in connection with the injuries caused to Mr. Tross.

Defendants filed a joint Motion for Summary Judgment (Doc. No. 125), arguing that plaintiffs cannot establish the necessary element of notice to prevail on a claim of negligence.  Additionally, RCHC and Marriott argue that they are entitled to summary judgment on all plaintiffs' claims because they owed no legal duty to the plaintiffs.

1

## II.   STATEMENT OF FACTS[1]

On the morning of August 25, 2010, plaintiffs were in a guest room at the Hotel. Mr. Tross was in the shower in their hotel room and was struck on the head by a falling tile.  Mrs. Tross states that, on August 24, 2010, the morning before the incident, she had noticed that one of the tiles in the shower appeared to be coming away from the wall.  Deposition of Theresa Tross ("Mrs. Tross Dep.") at 72:7-25 (Feb. 2, 2013). She mentioned the loose tile to her husband, but they did not alert Hotel staff to the problem. Id. at 74:1-77:12.  Upon returning to the hotel room that night, Mrs. Tross looked at the tile she had previously seen coming away from the wall:  she observed that it was now flat against the shower wall and that there appeared to be fresh white caulk in the shower.  Id. at 77:25-78:8.

Beginning in mid-2006, the Hotel was completely renovated.  Defs.' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1") (Doc. No. 125-1) ¶ 10.  As part of that renovation, tile work was done in the bathroom of the hotel room in which plaintiffs stayed.  Id.  Tom Muia, an employee of Marriott Design and Construction, conducted a final inspection of all rooms, including the tile work, after the renovations were completed.  Id. ¶ 14.  In order to make ongoing repairs to rooms, the Hotel employs what it calls a "Clean and Repair Everything" (or "CARE") team that attends to vacant rooms on a rotating basis.  Id. ¶ 26.  Additionally, housekeeping staff and guests can report problems for repair.  Deposition of Donald Dominique ("Dominique Dep.") at 25:7-21, 88:22-90:11 (Aug. 14, 2012).

---

[1] For purposes of the instant Motion, the court accepts the undisputed facts in the parties' Local Rule 56(a) statements and views all disputed facts in the light most favorable to the non-moving plaintiffs.

At the time of the accident, the Hotel was owned by non-party RC Hotels Virgin Islands, Inc. ("RCHVI"). Deposition of Deborah Nichols ("Nichols Dep.") at 23:1-2 (Aug. 28, 2012). RCHVI is an indirect subsidiary of Marriott. Id. at 23:6-12.

Marriott procured insurance liability coverage on behalf of non-party RCHVI for the Hotel property. Pursuant to an operating agreement between RCHVI and RCVI, the Hotel was operated, managed, possessed, and controlled by RCVI at the time of the accident. RCVI is directly owned by RCHC, which in turn is an indirect subsidiary of Marriott. Id. at 6:1-7, 26:12-14.

### III.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering a motion for summary judgment "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists. Id. In making this determination, the trial court "may not make credibility determinations or weigh the evidence." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (internal citations and quotation marks omitted). Rather, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp. 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). In situations where "the non-movant bears the burden of proof

3

at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." Ginsberg v. Healy Car & Truck Leasing, Inc., 189 F.3d 268, 270 (2d Cir. 1999).  Once the moving party has satisfied its burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. Of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Lyons v. Lancer Ins. Co., 681 F.3d 50, 56 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)) (stating that a non-moving party must point to more than the "mere existence of a scintilla of evidence" in order to defeat a motion for summary judgment).

## IV.   DISCUSSION

The defendants argue that they are entitled to summary judgment because the plaintiffs cannot establish notice, which is a necessary element of their negligence claim.  Defs.' Mem. Mot. Summ. J. (Doc. No. 126) ("Defs.' Mem.") at 4-20.  Defendants allege that there is (1) no evidence to support a finding of constructive notice and (2) no credible evidence to support a finding of actual notice of the tile's harmful condition.  In addition, RCHC and Marriott argue that they are entitled to summary judgment, because they did not own, operate, manage, or control the Hotel at any time relevant to this litigation, and plaintiffs, thus, cannot establish that RCHC and Marriott owed them a duty of care, which is also a necessary element of a negligence claim. Defs.' Mem. at 20-22.

The parties having agreed, and the court finding no conflict between the laws of Connecticut and the Virgin Islands as they pertain to the present Motion, it is unnecessary to perform a choice of law analysis pursuant to Connecticut's choice of law rules. Defs' Mem. at 4; Pls.' Mem. Opp. to Defs.' Mot. (Doc. No. 133) ("Pls. Mem.") at 5-6. Rather, the court applies the relevant law common to both jurisdictions.

### A. Notice

Mr. Tross was a business invitee at the Hotel and, as such, the entity or entities that owned, possessed, or controlled the Hotel premises, see Doty v. Shawmut Bank, 58 Conn. App. 427, 433 (2000), owed Mr. Tross "the duty to maintain its premises in a reasonably safe condition," Martin v. Stop & Shop Supermarket Companies, 70 Conn. App. 250, 251 (2002); see also Restatement (Second) of Torts § 332(3) (1965). In order to establish the defendants' liability for Mr. Tross's injury, plaintiffs must prove that the defendants had "actual or constructive knowledge of the 'specific defective condition which caused the injury and not merely of conditions naturally productive of that defect. . . . [S]uch knowledge cannot be found to exist from a knowledge of the general or overall conditions obtaining on the premises.'" Boretti v. Panacea Co., 67 Conn. App. 223, 228 (2001) (citations omitted). The court notes that summary judgment is "especially ill-adapted to negligence cases," because "[t]he conclusion of negligence is necessarily one of fact." Halstead v. BJ's Wholesale Club, 2005 WL 1757199, at *2 (Conn. Super. June 14, 2005) (citations and internal quotation marks omitted).

#### 1. Constructive Notice

In order to establish constructive notice, the condition must have "existed for a length of time sufficient for the defendant's employees, in the exercise of due care, to discover the defect in time to have remedied it." Gulycz v. Stop and Shop Cos., 29

Conn. App. 519, 521 (1992).  Defendants argue that plaintiffs cannot establish constructive notice, because there is no evidence as to how long the defective condition existed, and a reasonable jury thus could not conclude that the tile was in a dangerous condition for a time sufficient to have allowed the defendants to discover it through a reasonable inspection.  Defs' Mem. at 7.

Plaintiffs contend that defendants could or should have discovered the condition through routine visual inspections or regular housecleaning practices.  Pls.' Mem. at 21-23.  However, the record does not support plaintiffs' assertion.  There is no evidence that the tile came loose, causing it eventually to fall, at any time other than immediately prior to when it detached from the wall.  Mrs. Tross testified that she specifically looked at the shower tiles the night before the incident, at which time they appeared to be lying flat against the wall.  Mrs. Tross Dep. at 77:25-78:6.  Without further specific evidence, it would be unreasonable for a jury to conclude that the defendants could or should have known that the tile was in a dangerous condition even as of the night before the incident, when, as Mrs. Tross testified, it appeared to be in good condition.  It would be similarly unreasonable for a jury to conclude that defendants could have discovered the alleged defect between the night before the incident, when Mrs. Tross performed a satisfactory visual inspection, and the following morning, when the tile came off the wall.  Certainly, there is no evidence in the record before the court that any of defendants' employees entered the room during that period.

Regarding a more invasive inspection, defendants argue that this case is analogous to Cox v. Santini Villa Apartments, in which the Superior Court of Connecticut granted summary judgment in defendants' favor after finding that the

6

plaintiff could not establish constructive notice because there was no evidence as to how long a brick had been loose before it dislodged and caused her to fall. 2013 WL 3802388 (Conn. Super. Ct. July 1, 2013). "[W]ithout any evidence as to how long the [dangerous condition existed], a jury could not reasonably conclude that the allegedly dangerous condition existed for such a time that the defendants had notice of it and failed to take reasonable steps to remedy it after such notice." Id. at *2. In Cox, as in the present case, the plaintiff alleged that the dangerous condition was caused by defective installation and could have been discovered by an in-depth inspection consisting of dismantling the item in question. Id. at 2; Pls.' Mem. at 19-21. The inspection proposed by the plaintiffs here, as in Cox, is not reasonable. See id.; see also Considine v. City of Waterbury, 279 Conn. 830, 882 (2006) (unreasonable to require a property owner to break window in order to determine if it was made from correct type of glass, when there was no visible indication that anything was wrong with the glass).

Because plaintiffs cannot point to any evidence from which a jury could reasonably infer when the tile came loose, it would be unreasonable for a jury to find that the tile came loose at such a time and in such a manner as to afford the defendants the opportunity to discover the defect through a reasonable inspection. Gulycz, 29 Conn. App. at 522. Plaintiffs, therefore, cannot prevail on a theory of constructive notice of the dangerous condition.

### 2. Actual Notice

Defendants also argue that, as a matter of law, they lacked actual notice of the defective condition because there is no credible evidence to establish actual notice. Defs.' Mem. at 10. Defendants assert that Mrs. Tross's testimony, the only evidence in

7

the record supporting actual notice, should be discounted by the court as incredible as a matter of law.  Id. at 11.

Defendants' argument rests on the premise that, although a district court must generally resolve all credibility determinations in favor of the non-moving party, "facts must be viewed in the light must favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts . . . .  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007) (finding that plaintiff's testimony of a car chase should have been discounted at the summary judgment stage when it was clearly contradicted by a videotape of the incident).  However, this is an extreme remedy to be undertaken only in "the rare circumstances where the plaintiff relies almost exclusively on [his or her] own testimony, much of which is contradictory and incomplete."  Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).  Trial courts should not "routinely engage in searching, skeptical analysis of parties' testimony . . . .  '[I]f there is a plausible explanation for discrepancies in a party's testimony, the court . . . should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete.'"  Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir. 2011) (quoting Jeffreys, 426 F.3d at 555 n.2).

Defendants argue that Mrs. Tross's testimony contradicts her husband's testimony and is unsupported by the evidence in the record.  Defs.' Mem. at 14-19.  Upon review, the court concludes that Mr. Tross's testimony does not contradict Mrs.

8

Tross's testimony, but rather fails to corroborate it. When asked, Mr. Tross stated he did not remember seeing a loose tile or having a conversation with Mrs. Tross about a loose tile.[2] Deposition of Jonathon Tross ("Mr. Tross Dep.") at 113:21-115:4 (Oct. 22, 2012). As to the remainder of the record, Mrs. Tross's testimony regarding the loose tile the day before the incident is simply not mentioned.[3] Furthermore, a lack of corroboration, without more, is insufficient for the court to disregard Mrs. Tross's testimony. Given the absence of any clear showing that Mrs. Tross's testimony is contradicted by any evidence in the more than 1,500 page record accompanying defendants' motion for summary judgment,[4] the court resolves this credibility determination in favor of the non-moving plaintiffs and determines that Mrs. Tross's testimony is sufficient to establish a material issue of fact as to actual notice.

---

[2] The court has taken into consideration that Mr. Tross testified as to lapses in his memory post-accident for the several days preceding the incident in question, including the day before the incident when Mrs. Tross allegedly saw the loose tile. Mr. Tross Dep. at 113:21-14:2.

[3] It is unclear where the corroboration demanded by defendants should or would necessarily be found. For example, no other witnesses are asked if Mrs. Tross told them about seeing a loose tile the day before the incident.

[4] The plaintiffs' expert, Stephen Estrin, summarily stated in his expert report that defendants "did not have actual notice." Estrin Report (Sept. 28, 2012) at 16. First, it is well established that experts may not testify in the form of a legal conclusion. See Densberger v. United Technologies Corp., 297 F.3d 66, 74 (2d Cir. 2002). Contrary to defendants' argument, this does not mean that plaintiffs have entirely conceded the element of actual notice. Mr. Estrin was not retained to provide an opinion on defendants' actual knowledge of the defect, nor does he have any identifiable expertise in that area. Estrin Report at 5. The sole support for his conclusion, as stated in his report, is the testimony of a hotel employee, Donald Dominique. Id. at 16.

B.  Duty of Care[5]

RCHC and Marriott argue that they owed no duty of care to the plaintiffs because they did not own, operate, manage, or control the Hotel at the time of the incident. Defs.' Mem. at 21.  The operating agreement between non-party RCHVI and RCVI indicates that non-party RCHVI owned the Hotel and that RCVI operated and managed it.  The limited additional evidence regarding the ownership structures of these companies indicates some relationship between the three defendants and non-party RCHVI.  Plaintiffs allege generally that, "[g]iven the ownership and operational structure," RCHC and Marriott are liable under an agency theory and that all three defendants owed a direct duty of care because they possessed and controlled the Hotel at the time of the incident.  Pls.' Mem. at 32-33.

To establish an agency relationship, plaintiffs must show:  "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking."  Wesley v. Schaller Subaru, Inc., 277 Conn. 526, 543 (2006).  In assessing whether an agency relationship exists, courts look at factors such as the extent of control exercised by the alleged principal, who provides the tools of the workplace, how payments are made, and the terms of the parties' agreement.  Id. (citing Restatement (Second) of Agency § 1 (1958)).  Plaintiffs' agency argument rests

---

[5] Plaintiffs assert that the court should not consider defendants' Motion insofar as it requests summary judgment in favor of RCHC and Marriott because defendants set forth this same argument in their prior Motion for Summary Judgment (Doc. No. 25), which the court dismissed (Doc. No. 88) due to defendants' failure to comply with Local Rule 56.  In the court's prior decision, however, the court did not reach the merits of defendants' claim, nor did the court prohibit the defendants from refiling their Motion in compliance with the Local Rules.  The purpose of summary judgment is to eliminate claims or defenses that are unsupported by the facts in order to promote the interests of judicial economy.  In light of this purpose, the court has considered defendants' entire Motion.

primarily on the ownership structure between the defendants and non-party RCHVI. Pls.' Mem. at 33.  However, "[a] corporate parent's ownership interest in a subsidiary, standing alone, is insufficient to demonstrate the existence of an agency relationship." Bigio v. Coca-Cola Co., 675 F.3d 163, 175 (2d Cir. 2012).  The evidence which plaintiffs allege could support a finding of agency—such as the operating agreement between RCHVI and RCVI, Pls.' Mem. at 27-28, and the renovation contract between non-parties Cliff Creek Builders and RCHVI, id. at 29[6]—do not raise a material issue of fact for a jury.  Because plaintiffs will bear the burden of proving this element at trial, they cannot survive summary judgment by relying on allegations alone.  See Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citing Fed. R. Civ. P. 56(e)).  Therefore, plaintiffs' assertion that "there are a number of other material factual questions which are left entirely unaddressed by the defendants," such as "marketing and the solicitation of hotel guests," Pls.' Mem. at 35, is insufficient to create a genuine issue of material fact in the absence of admissible evidence for these contentions.

The duty of care "does not depend on who holds legal title, but rather on who has possession and control of the property. . . . '[C]ontrol' has been defined as the power or authority to manage, superintend, direct or oversee." Linke v. Heritage New London LLC, 2013 WL 1493049, at *2 (Conn. Super. Ct. March 21, 2013) (citing Alfano v. Randy's Wooster Street Pizza Shop II, Inc., 90 Conn. App. 766, 773 (2005); Doty v. Shawmut Bank, 58 Conn. App. 427, 432 (2000)).  The court, thus, looks to see if the

---

[6] Additionally, the court concludes that these agreements do not provide evidence of ownership or control over the premises by RCHC or Marriott, because neither RCHC nor Marriott was a party to either agreement.  No reasonable jury could find that RCHC or Marriott exercised control over the premises based on references to RCHC or Marriott in the contracts between RCHVI, RCVI, and Cliff Creek Builder.

11

record contains any evidence indicating that RCHC and Marriott had and exercised control over the Hotel at the time of the incident.

In support of their argument that defendants RCHC and Marriott exercised sufficient control over the premises, plaintiffs state that Marriott provided insurance liability coverage for the Hotel property on behalf of RCHVI and that a Marriott employee, Tom Muia, acted as project manager for renovation projects at the Hotel. Pls.' Mem. at 28-29. However, the present record before the court indicates that Muia ceased all involvement with the Hotel at the conclusion of the renovation project in 2008, two years prior to the incident, and plaintiffs have produced no evidence that any Marriott employees held a similar position of control at the Hotel after the renovation or that a Marriott employee possessed any control over the Hotel at the time of the incident. Alternatively, plaintiffs assert that Marriott's decision to procure an insurance policy for RCHVI in relation to the Hotel is evidence of Marriott's control over the premises. Plaintiffs, however, cite no legal authority for this conclusion, nor do they explain how Marriott exercised control over the premises through the insurance policy.

With respect to RCHC, plaintiffs have presented no evidence indicating control or possession over the hotel at any time. Because plaintiffs will bear the burden of proving the element of duty at trial and have failed to come forward with evidence to create a genuine issue of material fact, the court concludes that summary judgment in favor of RCHC and Marriott is appropriate as to all counts.

## V. CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment (Doc. No. 125) is **GRANTED in part and DENIED in part**. The Motion is **granted** as to all claims against RCHC and Marriott. In all other respects, defendants' Motion is **denied**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 17th day of March, 2014.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge